IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANTHONY SMITH,

     Plaintiff,

v.                             CASE NO. 1:20-cv-249-AW-GRJ

SERGEANT HOWARD, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion for Summary Judgment in this "medical deliberate indifference" and "excessive force" case brought by *pro se in forma pauperis* prisoner Plaintiff Anthony Smith ("Smith") pursuant to 42 U.S.C. § 1983.  ECF No. 33.  Smith has responded in opposition, ECF No. 35, so the motion is ripe for consideration.

In support of their motion, Defendants supplied the Court with videotaped recordings (audio and video) of the events in question.  ECF No. 43 (SEALED).  Defendants represent that they have also made these recordings available to Plaintiff.[1]  ECF No. 41 at 3-4.  Smith has not

---

[1] When ruling on a motion for summary judgment, the district court may properly view videotaped evidence and "view the facts in the light depicted by the videotape."  *Scott v. Harris,* 550 U.S. 372, 380-81, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). *See also Lewis v. City of W. Palm Beach*, Fla., 561 F.3d 1288, 1290 n.3 (11th Cir. 2009) (applying

disputed the accuracy of the recordings.  In fact, he, too, acknowledged that the events which are the subject of this lawsuit were captured on video.  *See* ECF No. 35 at 1, 4-5.

For the reasons discussed below, Defendants' Motion for Summary Judgment, ECF No. 33, is due to be granted.

## I.  SUMMARY JUDGMENT EVIDENCE[2]

Smith's Eighth Amendment claims stem from events that took place at the Mayo Correctional Institution ("Mayo CI") on October 12, 2018. Smith's medical deliberate indifference claims relate to events that transpired earlier in the day when Smith experienced a mental health problem.  Smith's excessive force claims are two-fold and relate to events that happened later in the afternoon of October 12th.  The first excessive force claim arises from Defendant Sergeant Thompson's administration of

_____

*Scott v. Harris* and reviewing, *de novo*, videotaped evidence submitted to the district court at the summary judgment stage).

[2] Except for a disagreement about whether Smith was injured during the use of force incidents, the parties do not dispute the core facts of this case.  The dispute, rather, is in the interpretation of the facts.  Smith says that the Defendants' conduct violated his Eighth Amendment rights.  Defendants say that their conduct did not violate Smith's Eighth Amendment rights.

Prison staff continuously video-recorded the events that took place from 4:00 p.m. to 5:10 p.m. on October 12, 2018, documenting the events related Smith's excessive force claims. The video-recordings (both fixed wing and two hand-held) were filed under Seal with the Court's permission, ECF No. 43.

chemical agents into Smith's holding cell in an effort to force Smith's

compliance with a strip search ordered by prison staff.  The second

excessive force claim arises from Defendant Sergeant McGraw's

participation in Smith's forced cell extraction and forced decontamination

shower after Thompson's application of the chemical agents.

The material events related to Smith's medical deliberate indifference

claims include the following chronology.

While at recreation on October 12, 2018, Smith suffered "severe

mental distress." Amended Complaint[3] ECF No. 6 at 9.  Smith has a "well

established history of mental health issues recorded within the

Department's mental health division."  *Id.*  Smith declared a "psychological

emergency" to Defendant prison officers Sergeants Howard, Fike and

McGraw.  Amended Complaint, ECF No. 6 at 9.  Instead of taking him to

mental health services, Defendant officers Howard, McGraw and Fike

escorted Smith "through pre-confinement procedures and ultimately placed

---

[3] "A *pro se* plaintiff's complaint… if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence." *Howard v. Memnon,* 572 F. App'x 692, 694 (11th Cir. 2014) (per curiam) (citation omitted).  Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge…." Fed. R. Civ .P. 56(c)(4).  "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." *Ellis v. England,* 432 F.3d 1321, 1327 (11th Cir. 2005) (per curiam) (citation omitted).

him in his confinement cell without incident." *Id*. at 10.  During his confinement, Smith was ordered to submit to a strip search, and he refused. Declaration of Robert Thompson ("Thompson Decl."), ECF No. 33-13 ¶ 3; Smith's Opposition, ECF No. 35 at 2; ECF No. 43 (SEALED) Smith #L07093HH1 at :40.  Smith was then given several verbal warnings that if he did not comply with the staff's orders chemical agents would be administered to force his compliance.  ECF No. 43 (SEALED) Smith #L07093HH1 at :48-1:00.

What follows next is an account of the events related to Smith's excessive force claim based upon Defendants' use of chemical agents, all of which took place within a period of twenty-six (26) minutes.

At approximately 4:00 p.m. on October 12, 2018, Smith was given a final warning that chemical agents would be administered into his holding cell if he refused to comply with prison staff's directives, which included the strip search. Thompson Decl. ECF No. 33-13 ¶ 4; ECF No. 43 (SEALED), Smith #L07093HH1 at 1:37-2:05.   Smith refused to comply. ECF No. 43 (SEALED) Smith #L07093HH1 at 2:05.  Defendant Sergeant Thompson ("Thompson") was then summoned to Smith's cell to force his compliance. Thompson Decl. ECF No. 33-13 ¶ 3; ECF No. 43 (SEALED) Smith #L07093HH1 at 9:20.   At approximately 4:10 p.m., Thompson

administered one round of chemical agents, which consisted of three one-second bursts. Thompson Decl. ECF No. 33-13 ¶ 5; ECF No. 43 (SEALED) Smith #L07093HH1 at 9:20-27.  Smith still refused to comply.  Thompson Decl. ECF No. 33-13 ¶ 6; ECF No. 43 (SEALED) Smith #L07093HH1 at 17:48-51. At approximately 4:18 p.m., Thompson administered a second round of chemical agents (three one-second bursts).  Thompson Decl. ECF No. 33-13 ¶ 7; ECF No. 43 (SEALED) Smith #L07093HH1 at 17:54-58. Smith remained non-compliant.  Thompson Decl. ECF No. 33-13 ¶ 8; ECF No. 43 (SEALED) Smith #L07093HH1 at 23:35-24:15. Finally, at approximately 4:26 p.m., Thompson administered a third round of chemical agents and then ceased all use of force. Thompson Decl. ECF No. 33-13 ¶¶ 9, 11; ECF No. 43 (SEALED) Smith #L07093HH1 at 24:21-26.   Prior to the administration of each round, Smith was asked to comply and warned that chemicals would be applied if he did not.

After the attempt to obtain compliance through the administration of chemical agents, the correctional officers were forced to engage in a forced cell extraction. These events took place within roughly twenty (20) minutes.

After the third round of chemical agents was administered, Smith was instructed to surrender his hands to restraints so he could be taken to the shower for decontamination, but Smith refused.  ECF No. 43 (SEALED),

Smith #L07093HH1 25:00-28:47.  At approximately 4:45 p.m., a cell

extraction team forcibly removed Smith from his cell so he could be

decontaminated. Declaration of Travis King ("King Decl."), ECF No. 33-14

¶¶ 4, 5; ECF No. 43 (SEALED) Smith #L07093HH1 at 46:17-47:10.  The

extraction team consisted of Lieutenant R. Young, Defendant Sergeant J.

McGraw, Officer T. Wimberley, Officer J. Jackson, and Officer J. Bass.

King Decl. ECF No. 33-4 ¶ 4; ECF No. 43 (SEALED) Smith #L07093HH2 at

:15-2:15. The take-down lasted less than one minute.  ECF No. 43

(SEALED) Smith #L07093HH1 at 46:17-47:10; Smith #L07093HH2 at 2:58-

3:52. Smith says, without any supporting evidence, that he suffered

physical injuries from Defendants' use of excessive force during the cell

extraction in the form of pain and swelling in his eyes and ear.  Smith Decl.

ECF No. 35 at 11.[4]  Once restrained, Smith was taken to the

decontamination shower. Smith #L07093HH2 at 16:40-18:07.  At the

decontamination shower, Smith was released from his restraints, disrobed,

and instructed to wash himself. ECF No. 43 (SEALED) Smith #L07093HH1

at 48:05-51:16.   Smith refused to shower himself, so at approximately 5:00

---

[4] Smith has not supplied the Court with any documentation of his injuries even though
this Court previously informed Smith that he can obtain his medical records without a
court order.  *See* ECF No. 42 at 2.

p.m., members of the cell extraction team force-showered him. ECF No. 43 (SEALED) Smith #L07093HH2 at 16:30-20:35.

Immediately after the forced decontamination shower, Defendants escorted Smith to medical for a post use of force exam. *Id*. at 21:33-22:30. He was released two minutes later. *Id*. at 23:37. Video taken of Smith as he left his medical exam shows no visible injuries to Smith's eyes, ears, or face. ECF No. 43 (SEALED) Smith #L07093HH2 at 23:33-35. After the exam, at 5:09 p.m., Smith was placed in a non-contaminated cell. *Id*. 24:00-25:30. The post use of force exam related to both incidents— the administration of chemical agents and the forced cell extraction and shower—reported no injuries. Thompson Decl. ECF No. 33-13 ¶ 12 (use of chemical agents); Declaration of Jason McGraw ("McGraw Decl."), ECF No. 33-15 ¶ 10; Young Decl. ECF No. 33-16 ¶ 7; Declaration of James Bass ("Bass Decl.") ECF No. 33-17 ¶ 11.[5] (forced cell extraction).

## II.  SUMMARY JUDGMENT STANDARD

The entry of summary judgment is appropriate when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[5] The information relating to Plaintiff's injuries and/or medical treatment has been redacted from the use of force reports filed with the Court. *See* ECF Nos. 33-1 and 33-2.

In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-movant."  *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (per curiam).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d (1986), the movant bears the initial burden of establishing the nonexistence of a triable issue of fact.  There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)).  In other words, "[i]f a

reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933-34 (11th Cir. 1989).

The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. With regard to issues on which the non-moving party bears the burden of proof, the moving party need not support its motion with evidence "*negating* the opponent's claim." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993) (emphasis in original) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc* )). Once the moving party has carried its burden, the non-moving party must show the existence of a genuine issue of material fact to avoid summary judgment. *Fitzpatrick*, 2 F.3d at 1116.

As a general rule, *pro se* filings are "to be liberally construed." *Estelle v. Gamble,* 429 U.S. 97,106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). While *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of

9

establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (citation and internal quotation marks omitted).

## III.  DISCUSSION

### A.    Eighth Amendment: Cruel and Unusual Punishment.

The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs. *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (citation omitted).  Each of these claims requires a two-prong showing: an objective showing of a deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing that the official had a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (internal citations and quotations omitted).  Both inquiries are contextual.  Because the Eighth Amendment "draws its meaning from the evolving standards of

decency that mark the progress of a maturing society," the objective harm inquiry is contextual in that it is responsive to contemporary standards. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (internal citation and quotation omitted). Additionally, what is necessary to show sufficient harm and what is necessary to show a sufficiently culpable state of mind varies with the type of Eighth Amendment claim at issue. *Id.* at 8, 112 S.Ct. at 1000.

In the present case, Smith alleges two Eighth Amendment violations—one for deliberate indifference to his serious medical (mental health) needs, and the other for excessive force.

### 1.   *Medical Deliberate Indifference Claims.*

Smith's medical deliberate indifference claims are based on his sworn statements that he declared a "psychological emergency" while at recreation on October 12, 2018, yet Defendant prison officers Howard, Sievers and Fike failed to refer him for treatment.  Amended Complaint, ECF No. 6 at 9.  In their Motion for Summary Judgment, Defendants do not directly address Smith's medical deliberate indifference claims.  They do, however, acknowledge that Smith has put Defendants' failure to respond to his request for mental health services at issue in this case.  *See* ECF No. 33 at 2, 13.

The Constitution forbids prison officials from consciously ignoring the serious medical needs of prison inmates.  Such "deliberate indifference" to an inmate's serious medical need by a state actor is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *See Estelle*, 429 U.S. at 104-105 97 S.Ct. at 292.  To show that the prison official was deliberately indifferent, the plaintiff must first establish that he suffered from an "objectively serious medical need."  *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004).  "A serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id*. (citation and internal quotation marks omitted).  "In either case, the medical need must be one that, if left untreated, poses a substantial risk of harm."  *Id*. (citation and internal quotation marks and alteration omitted).

Under the subjective prong, the prisoner must establish: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  *Id*. (citation omitted).  As the Eleventh Circuit has explained:

> A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the

12

> pain resulting from his or her illness. In *Estelle,* the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death'" or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle,* 429 U.S. at 103, 97 S.Ct. 285 (quoting *In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 34 L. Ed. 519 (1890)).

*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).

At the summary judgment stage, the burden is on the moving party, here, the Defendants, to establish that there is no genuine issue of material fact regarding Smith's claim that Defendants violated the Eighth Amendment by failing to refer him for mental health treatment.

Even though Defendants do not expressly address this claim, the Court is, nonetheless, required to review the sufficiency of the claim. There is a fatal problem to Smith's claim.   The record without dispute by Smith reflects that Smith suffered no physical injury from his lack of mental health treatment.  Smith does not allege that he suffered physical harm from Defendants' failure to refer him for mental health services and there is nothing in the record to suggest that he suffered any type of injury from his claim that Defendants violated the Eighth Amendment by failing to refer him to mental health treatment.  *See* Complaint, ECF No. 6 and Smith Decl. ECF No. 35 at 10-12.  In the absence of any evidence, or even a

description about the nature of the alleged psychological emergency, its extent or any resulting damage, there is nothing in the record to support the claim that Smith's mental health needs were "serious" under the Eighth Amendment.

The Prison Litigation Reform Act ("PLRA") provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of a physical injury" which is more than *de minimis.* PLRA, 42 U.S.C. § 1997e(e); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312-13 (11th Cir. 2002).

In the present case, because there is no evidence that Plaintiff suffered a physical injury or that a mental health condition was exacerbated because he was not referred for mental health treatment Smith is barred under the PLRA from asserting a claim for mental or emotional injury against Defendants Sievers, Fike and Howard.

### 2. *Excessive Use of Force Claims.*

Smith's excessive use of force claims relate to two separate incidents that took place on October 12, 2018: (1) the use of chemical agents against him while he was in his holding cell; and (2) his forced extraction from his cell and forced decontamination shower after the chemicals were

administered.  The only named Defendants who took part in these two

incidents are Thompson, who administered the chemical agents, and

McGraw, who took part in the forced cell extraction and forced shower.

Smith says that the administration of chemical agents and forced cell

extraction caused "serious injury to his right eye and ear… which injury

continues to cause [Smith] severe pain and trouble with his balance and

sleep."  ECF No. 6 at 10.

"In Eighth Amendment excessive force cases, the 'core judicial

inquiry' is 'not whether a certain quantum of injury was sustained, but rather

whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm.'" *Bowden v.*

*Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (per curiam) (quoting

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). The court considers

five factors in determining whether force was used sadistically and

maliciously:

> (1) the extent of injury; (2) the need for application of force; (3)
> the relationship between the need and the amount of force
> used; (4) any efforts made to temper the severity of a forceful
> response; and (5) the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by the responsible
> officials on the basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citations and

internal quotation marks omitted).

"When we consider whether the jailer's use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Bennett v. Parker*, 989 F.2d 1530, 1533 (11th Cir. 1990)). "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson v. Moody*, 206 F. App'x 880, 884-85 (11th Cir. 2006) (per curiam) (quoting *Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000).

Because Smith's excessive force claims relate to two separate incidents, the Court will address each in turn.

*1. Thompson's Use of Chemical Agents against Smith.*

It is undisputed that Thompson administered three rounds of chemical agents (three one-second bursts per round) into Smith's holding cell because Smith failed to submit to a strip search ordered by prison staff.[6]  Smith says that Thompson's use of the chemical agents against him

---

[6] Plaintiff attests that Defendant Thompson sprayed him with chemical agents while in his holding cell because Plaintiff refused to submit to a strip search. ECF No. 35 at 11. Defendant Thompson also attests that he sprayed chemical agents into Plaintiff's holding cell to force Plaintiff's compliance with the ordered strip search.  Thompson Decl. ECF No. 33-13. The videotaped evidence also confirms that Thompson administered three rounds of chemical agents into Smith's holding cell because he failed to submit to a strip search.  ECF No. 43 (SEALED) Smith #L07093HH1 at :40-1:00; 9:20-:27; 17:54-:58; 24:21-:26.

constituted excessive force because Smith did not "threaten[] staff in any way, shape or form.  Neither was [his] demeanor threatening sufficient to require that [he] be sprayed with chemicals… [He] was sprayed in punishment for refusing a strip search.  [He] was not sprayed for exuding any physical imminent threat to any staff or other prisoners."  Smith Decl. ECF No. 35 at 11.  Defendants attest—and the videotaped evidence confirms—that Thompson administered the chemical agents in an attempt to force Smith's compliance with a strip search. ECF No. 43 (SEALED) Smith #L07093HH1 at :40-1:00.

The use of chemical agents as a means of force against a recalcitrant prisoner who refuses to obey an order generally does not violate the Eighth Amendment. *See Danley,* 540 F.3d at 1307 ("A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.").  This is true even though chemical agents, by their very nature, are "designed to disable a suspect… by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis," and, occasionally, "disorientation, anxiety, and panic in the person sprayed." *Id.* at 1309 (citations omitted). Thus, this degree of pain is

constitutional because the effects are temporary—or at least they are intended to be.

The temporary pain caused by the use of chemical agents may be constitutionally cognizable, however, when the chemical agents are used unnecessarily.   *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir. 1984) (recognizing that "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."); *see also, Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) ("Among unnecessary and wanton inflictions of pain are those that are 'totally without penological justification.") (citations and internal quotation marks omitted).

Finally, even where chemical agents are permissibly used, when the effects are longer lasting or exacerbated by prolonged exposure, inadequate decontamination, or poor ventilation—something beyond the immediate short-term effects of being sprayed with the chemical agent— the use of chemical agents may pose an unreasonable risk to an inmate's health that is serious enough to trigger inquiry under the Eighth Amendment. *Danley,* 540 F.3d at 1311.  *See Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991) (explaining that in

18

Eighth Amendment prison cases, "the infliction of punishment" means "a deliberate act intended to chastise or deter"); *Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (holding that punitive treatment levied against a restrained prisoner was unconstitutional gratuitous infliction of wanton and unnecessary pain); *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984) (holding prison guards' use of tear gas and other weapons against prisoner in his cell "crossed the line separating necessary force from brutality").

In the present case, Smith's claims fail to establish an excessive force claim in violation of the Eighth Amendment. Applying the Eighth Amendment's objective prong to this case, the injuries Smith sustained in the administration of the chemical agents were not sufficiently serious as to constitute a denial of a "minimal civilized measure of life's necessities." Smith was warned several times that the chemical agents would be applied if he did not submit to a strip search.  ECF No. 43 (SEALED) Smith #L07093HH1 at :40-1:00; 17:48-51; 23:35-24:15. Each time the chemicals were administered, Smith was given the opportunity to comply rather than be sprayed.  Nevertheless, he resisted. *Id.* at 1:37-2:05; 17:48-51; 23:35-24:15. Moreover, the chemical applications were limited to three one-second bursts into Smith's cell spaced eight (8) to nine (9) minutes apart to

allow Smith to recover and potentially change his mind about his non-compliance.

Finally, although the chemical agents irritated Smith's eyes and lungs, *see* ECF No. 43 (SEALED) Smith #L07093HH1 at 11:00-17:48; 18:00-23:35, Smith's discomfort was temporary and ameliorated by the decontamination shower that took place within twenty-four (24) minutes of the last round administered.  ECF No. 43 (SEALED) at 16:40-18:07. Accordingly, the objective prong is not met here.

Smith's claims also fail under the subject test. Applying the five-factor subjective test, Smith suffered temporary minor eye and lung irritation from the chemical agents applied to force his compliance with a strip search. Smith did not sustain any physical injuries beyond this minor, temporary discomfort.  The force applied, therefore, was the minimum necessary to attempt to force Smith's compliance, especially when compared to other alternatives such as physical force.

Notably, Smith does not challenge the strip search as having been improperly ordered.  Courts have found, for example, that "detect[ing] and deter[ing] the possession of contraband" is a legitimate penological objective of a strip search ordered in a prison setting. *Florence v. Bd. of*

*Chosen Freeholders of Cty. of Burlington,* 566 U.S. 318, 328, 132 S.Ct. 1510, 1517, 182 L.Ed.2d 566 (2012).

Furthermore, Thompson stopped administering the chemicals after the third round even though Smith still refused to comply. Thompson Decl. ECF No. 33-13 ¶¶ 9, 11; ECF No. 43 (SEALED) Smith #L07093HH1 at 24:27.  The evidence shows then that Thompson did not administer the chemical agents for the sole purpose of punishment or infliction of pain. Rather, Thompson's sole purpose was to attempt to bring Smith into compliance with the prison staff's orders.

Importantly, Thompson did not cross the line separating necessary force from brutality. That is especially true here where Thompson administered three rounds during a period of sixteen (16 minutes) then ceased.  Afterwards, Defendants immediately offered Smith a decontamination shower.  When Smith refused to assist, Defendants forcibly extracted Smith from his cell so that he could be decontaminated. Defendants even force-showered Smith when he refused to decontaminate himself.  The forced decontamination shower occurred less than half an hour after the last round of chemical agents was administered.  Smith was then examined by medical staff and placed in an uncontaminated cell.

This type of force is hardly "force that is repugnant to the conscience of mankind."  The Court, thus, has no problem concluding that no genuine dispute of material fact exists with respect to Smith's claim that Thompson's use of chemical agents against him violated the Eighth Amendment.  The evidence of record, including the video of the incident, demonstrates that Thompson's use of force was applied in a good-faith effort to maintain or restore discipline and not to maliciously and sadistically cause harm to Smith.  Accordingly, Thompson is entitled to judgment as a matter of law on this claim.

### 2.  *Sergeant McGraw's Forced Cell Extraction and Decontamination Shower.*

Sergeant McGraw ("McGraw") is the only named defendant who took part in forcibly extracting Smith from his cell and then force-showering him. *See* King Decl. ECF No. 33-4 ¶ 4; ECF No. 43 (SEALED) Smith #L07093HH2 at :15-2:15. Sergeant Howard ("Howard") was also present for these events, but her role was strictly limited to videotaping them. Sergeant Howard Declaration ("Howard Decl.") ECF No. 33-18 ¶ 6.[7]

---

[7] "It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City*, 77 F.2d 1436, 1441-42 (11th Cir. 1985) (citations omitted).  In this case, because the Court finds that the forced extraction used only that minimal amount of force that was necessary, no Eighth Amendment violation occurred.  That means,

Smith says that during the cell extraction McGraw injured him, causing "severe pain in [his] eyes and ear."   Smith Decl. ECF No. 35 at 11. Defendants, however, have filed affidavits attesting that the post-of-use reports from the cell extraction reported no injuries. McGraw Decl. ECF No. 33-15 ¶ 10; Young Decl. ECF No. 33-16 ¶ 7; Bass Decl. ECF No. 33-17 ¶ 11.[8]  The findings of the post use of force exam are consistent with the videotaped evidence.

Smith has failed to demonstrate that his Eighth Amendment rights were violated during the cell extraction. Applying the Eighth Amendment's objective prong, Smith sustained no injuries in the take-down or the forced cell extraction.  The video camera captured a close-up of Smith exiting his medical exam, revealing no signs of trauma to either Smith's eyes or ears. ECF No. 43 (SEALED) Smith #L07093HH2 at 23:33-35.[9]  Notably, Smith has not submitted any evidence, medical or otherwise, showing that he was

---

neither McGraw (who participated in the forced cell extraction) nor Howard (who videotaped it) are liable under Section 1983.

[8] The Court notes that information related to Smith's injuries have been redacted from the post use of force reports filed with the Court.  *See* ECF Nos. 33-1 and 33-2.

[9] The Court also notes the Smith has not provided the Court with any documentation by way of a medical record showing that he was injured as a result of the forced cell extraction or forced decontamination shower.

injured as a result of the forced cell extraction or the forced decontamination shower.

And most telling, the videotaped evidence unquestionably shows that Smith was not injured during either the forced cell extraction or the forced shower.  Consequently, Smith has failed to satisfy the objective prong to support an Eighth Amendment excessive force claim.

Smith also has not satisfied the subjective prong of the Eighth Amendment claim relating to the cell extraction. Applying the five-factor subjective test, McGraw applied force to get Smith to a decontamination shower after he had been sprayed with chemical agents.  McGraw then force-showered Smith to decontaminate him after Smith refused to shower himself.  The videotaped evidence shows that the force applied in both instances was the minimum necessary.  The entire take-down and extraction lasted just a few minutes, as did the forced decontamination shower.  The videotaped evidence also shows that the force applied during both incidents was in a good faith effort to maintain or restore discipline. The videotape does not contain any sounds of pain or cries for help from Smith.  Rather, the videotape discloses several times the officers instructing Smith to stop resisting.  ECF No. 43 (SEALED) Smith # L07093HH1 at 46:17-47:10; Smith # L07093HH2 a 16:40-18:07.

Yet, even if Smith had been injured in either incident, the force applied was both measured and necessary to decontaminate Smith. Had Smith complied with clear instructions that he submit to hand restraints so he could be taken to the post-contamination shower, no forced cell extraction would have been necessary. Had Smith showered himself, no force would have been needed to decontaminate him.

The videotaped evidence shows that the force used in both instances was necessary for Smith's own good and was in no way "maliciously or sadistically [intended] to cause harm." *Wilkins*, 599 U.S. at 37, 130 S.Ct. at 1176. Because Smith's generalized accounting of these events is expressly contradicted by the videotape evidence no reasonable jury could believe it and, therefore, the Court cannot adopt Smith's generalized version of the facts for purposes of summary judgment. *Scott,* 550 U.S. at 380, 127 S.Ct. 1769.

In sum, no genuine dispute of material fact exists as to Smith's claim that McGraw violated his Eighth Amendment rights during either the forced cell extraction or the forced decontamination shower. The videotape evidence demonstrates without contrary evidence that McGraw's use of force was applied in a good-faith effort to maintain or restore discipline and

not to maliciously and sadistically cause harm to Smith.  Accordingly, McGraw is entitled to judgment as a matter of law on this claim.

### 3. Excessive Force Claims Against Sievers, Fike, and Howard.

As for the remaining three defendants, Smith has no excessive force claim against any of them.  First, Defendant Sergeants Sievers and Fike did not participate and were not present during the use of force incidents that occurred on October 12, 2018.  *See* Declaration of Kevin Sievers ("Sievers Decl.") ECF No. 33-12 ¶ 3; *See* ECF No. 43 (SEALED) Smith #L07093HH2 at :15-2:15. Smith does not contest this fact.  Amended Complaint, ECF No. 6.

Second, Officer Howard's participation in the use of force incident was solely as a videographer of the events beginning at 4:40 p.m. through until Smith was placed in a secure uncontaminated cell after his forced shower.  *See* Sgt. Howard Incident Report (Oct. 12, 2018) ECF No. 33-9; Howard Decl. ECF No. 33-18 ¶¶ 3-4; ECF No. 43 (SEALED) Smith #L07093HH2 at 2:20-23.  Smith does not contest this fact either.

In sum, no genuine dispute of material fact exists with respect to Smith's claims that Defendants Sievers, Fike, or Howard violated his Eighth Amendments rights.  Defendants Sievers and Fike played no role whatsoever in the use of force incidents about which Smith complains.  And

26

Defendant Howard was only a passive participant to a constitutional use of force applied by McGraw to decontaminate Smith.  Accordingly, for all these reasons Defendants are entitled to judgment as a matter of law on Smith's excessive force claims.

**B.    Qualified Immunity.**

Defendants also argue that Thompson and McGraw— the officers who participated in the use of force incidents— are entitled to qualified immunity because they acted reasonably and did not violate Smith's constitutional rights.  ECF No. 33 at 15017. The Court agrees.

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a defendant must first prove that he or she was acting within the scope of his or her discretionary authority when the relevant conduct took place. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Once that is shown, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Id.*

In the present case, there is no dispute that Thompson and McGraw were acting under their authority as correctional officers. And the videotape evidence, and other evidence of record, documents that they acted reasonably under the circumstances.  Thompson administered the minimum measure of chemical agents needed to force Smith's compliance with an ordered strip search (three rounds).  Then, Thompson ceased all use of force.  McGraw, too, applied the minimum force necessary to extract Smith from his holding cell and decontaminate him in the shower after the chemical agents were applied.  Neither of these use of force events resulted in any injury to Smith beyond minor, temporary irritation and discomfort.  Accordingly, because Thompson and Smith did not violate Smith's Eighth Amendment rights, they are also entitled to qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 33, should be **GRANTED.**

**IN CHAMBERS** this 11th day of February 2022.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.